**397**                 Dennis et al. v. Mullane et al.

---

**399**                      **DEVISE.**

[Hamilton Circuit Court, January Term, 1886.]

Cox, Smith and Swing, JJ.

\*CHARLES W. DENNIS ET AL. V. MARIETTA C. MULLANE ET AL.

CONSTRUCTION OF A DEVISE.

> The testator, Richard Folger, by his will provided :   \*   \*   \*   "On the conditions hereinafter set forth I give and bequeath to my son, P. R. F., and my two daughters, M. B. P. & L. B. D., and their children, which they now have and may have hereafter, until said children shall become of lawful age, the use or rent of my aforesaid real estate, to be divided equally between them, share and share alike. But should any one or more of their chi-dren decease before they become of age as aforesaid, such deceased children's shares of the aforesaid rent of my real estate shall become as common stock and be divided equally between parents and children, share and share alike as aforesaid; but as each one of their children shall become of age, as aforesaid, such child's share of the aforesaid rent shall become the property of his or her parent during the natural lifetime of said parent. But if either of my aforesaid children should decease and leave one or more of their children under lawful age, then shall such deceased parent's share or shares be paid to their guardian, who shall expend the same in bringing up said minor children until they become of age as aforesaid, at which time all of the aforesaid shares shall be divided share and share alike, among the children of the aforesaid deceased parent until the last one of my aforesaid children shall have deceased, at which time I give and bequeath all of my aforesaid real estate to my grandchildren, to be equally divided among them all, share and share alike."
>
> *Held*, that subject to the estate granted to the children and the grandchildren, during the lives of the children, the remainder became vested in the grandchildren at the death of the testator, subject to be opened up to let in after-born grandchildren.

---

*The judgment in this case was affirmed by the Supreme Court, without report, December 20, 1888.

ERROR to the Court of Common Pleas of Hamilton county.

SWING, J.

The defendant in error, Marietta C. Mullane, filed her petition in the court below, asking for partition of certain property situated in the city of Cincinnati, in which property she claimed an interest as devisee under the will of her grandfather, Richard Folger, (and also a seventh interest by purchase), who died testate in 1841, leaving three children and several grandchildren surviving him. She made parties defendant those whom she claimed to be the owners of the other five-sevenths. The clause in the will of her grandfather under which she claimed as devisee, is as follows: after disposing of the use or rents of said real estate until the death of his last child, the testator says: "at which time I give and bequeath all of my aforesaid real estate to my grandchildren, to be equally divided among them all, share and share alike."

The plaintiff, and those whom she made parties defendant, were the grandchildren, or their representatives, who were living at the death of the last child of the testator, who was Peter B. Folger, and who died in May, 1884. But several grandchildren of the testator had died, leaving heirs previous to the death of the testator's last child. These heirs came in and were made parties defendant to the said petition, and set up their claim to an interest under the will. To these answers demurrers were filed and heard by the court below, which demurrers the court sustained. In this it is claimed here, that the court below erred, and this action is brought to reverse that judgment.

Did the testator intend that all of his grandchildren should have this estate, or only those who were living at the time of the death of his last child?

By the law of our state, any person of lawful age and sound mind, and not under restraint, may, in accordance with certain forms, by last will, dispose of his real and personal property as he pleases—provided that the disposition is not an unlawful one.

The right being granted, it is the duty of the court to see to its enforcement.

The devisees must have the property. But who are the devisees? Those whom he has intended as devisees. The intention of the testator must therefore be the only object of inquiry by a court.

Many valuable rules have grown up in the law to aid courts in construing wills, but they can only be valuable as they aid the court in ascertaining the intention of the testator. Therefore, all must bend to this one object, the intention. If they cannot aid, they must be cast aside or trodden under foot.

The court should be placed as nearly as possible in the shoes of the testator. It should know his surroundings, the ties that bound him, in order that it may read his words as he read them. Then, holding the will by its four corners, the question is, what has he intended by what he has said?

One of the leading cases in the construction of wills is the case of Smith v. Bell, in 6th Peter's Reports. In this case is found a splendid statement of the rules of construction of wills, and in applying them, the eminent judge who decided the case, has furnished as fine an example of common sense and reason as can be found in our reported cases. The case was certified to the Supreme Court of the United States from the circuit court of Tennessee, by reason of a divided court; but after reading the decision of the illustrious judge, there is no longer any room to doubt what the intention of the testator was.

The will under consideration in that case provided: "I give to my wife, Elizabeth Goodwin, all my personal estate whatsoever, and wheresoever, and of what nature, kind, and quality soever, after payment of my debts, legacies and funeral expenses; which personal estate I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely, the remainder of said estate after her decease to be for the use of the said Jesse Goodwin." (Jesse Goodwin was his son and only child). The court held that the wife took a life estate and the son a vested remainder.

The court says : " It must be admitted that words could not have been employed which would be better fitted to give the whole personal estate absolutely to his wife, or which would more clearly express that intention;" but the gift to the son " gives the remainder of the estate, after his wife's decease, to the son, with as much clearness as the preceding words give the whole estate to his wife." * * * "In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him, and to influence .him in the disposition of his property, are all entitled to consideration in expounding doubtful words, and ascertaining the meaning in which the testator used them."

" If we look to the situation of the parties, to the motives which might naturally operate on the testator, to the whole circumstances so far as they appear in the case, we find every reason for supporting the intention which the words, giving effect to all, of themselves import. The only two objects of the testator's bounty were his wife and his son. Both must have been dear to him." * * * " What feelings, what wishes, might be supposed to actuate a husband and a father having so little to bestow on a wife and child he was about to leave behind him? His affections would prompt him to give something to both. He could not be insensible to the claims of either." * * * "All his feelings would prompt him to make, as far as in his power, a comfortable provision for his wife during her life, and for his child after her decease. This he has attempted to do. No principle in our nature could prompt him to give his property to the future husband of his wife to the exclusion of his only child. Every consideration, then, suggested by the relation of the parties and the circumstances of the case, comes in aid of that construction which would give effect to the last as well as the first clause in the will, which would support the bequest of the remainder to the son, as well as the bequest to the wife. It is not possible to doubt that this was the intention of the testator."

The general principles applied by the judge in the decision of this case, we think, are equally applicable to the case at bar.

At the time of the testator's death he had living his three children and eleven grandchildren. He provides for them during the lives of his children as follows : "On the conditions hereinafter set forth, I give and bequeath to my son, Peter B. Folger, and my two daughters, Mary B. Plummer and Lydia B. Dennis, and their children which they now have and may have hereafter, until said children shall become of lawful age, the use or rent of my aforesaid real estate, to be divided equally between them all, both parents and children, share and share alike. But should any one or more of their children decease before they become of age, as aforesaid, such deceased children's shares of the aforesaid rent of my real estate shall become as common stock and be divided equally between parents and children, share and share alike, as aforesaid. But as each one of their children shall become of age, as aforesaid, such child's share of the aforesaid rent shall become the property of his or her parent during the natural lifetime of said parent. But if either of my aforesaid children should decease and leave one or more of their children under lawful age, than shall such deceased parent's share or shares be paid to their guardian, who shall expend the same in bringing up said minor children until they shall become of age, as aforesaid, at which time all of the aforesaid shares shall be divided share and share alike among the children of the aforesaid deceased parent, until the last one of my aforesaid children shall have deceased."

In this, the testator reveals himself as a man of more than ordinary wisdom and foresight. To this provision of the will he had evidently given a good deal of thought and his plan of providing for his children and grandchildren was well worked out.

In this provision of the will no distinction is made between any of his children or grandchildren. They were the sole objects of his bounty, and all were to share it equally. In fact, his grandchildren seem to have been as dear to him as his children, but he was thoughtful and considerate of all. In the rents and profits, children and grandchildren were to share equally. The share of the minor children to go to the parents or guardians, thus providing for their education and support; but when of age and able to support themselves, their share going to the parent who, then, would in all probability be more in need of support.

It was claimed by counsel for plaintiff below, that the fact that the testator provides that in case of a child dying before the parent and while under age, that its share should go to its parent and not its children, provided it should have any, indicates an intention on the part of the testator to prevent his great-grandchildren from in any way participating in the distribution of his estate. But it may be said that after the death of a child and then the death of a grandchild, that the children of the grandchild would inherit the share of the rents and profits. But we fail to gather any intention from the failure to make definite provisions in either contingency.

At the time he made his will, he had but two classes in his mind, his children and grandchildren. His grandchildren were young: he probably did not think of any of them dying under age, leaving children. His great-grandchildren were not objects of his bounty; if they got any benefit from his estate, it would be by descent from his grandchildren.

It was urged by counsel in argument that because the testator made no mention of great-grandchildren, or the heirs of his grandchildren, that, therefore, they were not to share in the distribution of his estate, and in passing on the demurrer the court below laid considerable stress on this point. But we fail to see any reason for this. If the estate vested in the grandchildren at the death of the testator, subject to the use to the children and grandchildren during the lives of the children, then the great-grandchildren would take, if they take at all, by descent, and not by devise.

The only question is, when did the estate in remainder vest in the grandchildren? At the time of the death of the testator, or at the time of the death of the last child? And, as a matter of course, whenever it vested, the death of a devisee would cast his estate upon his heirs; and so, if it should be held that the estate vested in the grandchildren living at the death of the last child, if any of those grandchildren should have died the next moment, their heirs would now take by inheritance. Equally so, if the estate vested in the grandchildren living at the death of the testator.

And, while it is true beyond any question, that the testator did not intend that any of his great-grandchildren should take as devisees, it is equally true, from the mere fact that he has not mentioned them at all, that he did not intend that they should *not* take by descent whatever estate they might be entitled to by inheritance.

We come now to the main clause in the will, "at which time," (referring to the death of his last child), "I give and bequeath all my aforesaid real estate to my grandchildren to be equally divided among them all, share and share alike."

Did the testator intend the estate, whatever it is, whether a remainder or executory devise, (and we think it makes no difference which), given by this clause, to vest in those grandchildren living at his death, or those living at the death of his last child?

It is a rule of construction, that every devise vests at the death of the testator unless a contrary intention appears from the will, and this rule of law is not founded wholly on any rule of policy, but upon the fact that, naturally, the testator intends that his will shall take effect, and the rights of devisees under it shall be fixed, at the time of his death. The rule is not a technical one, but is founded on substance and reason. The universal idea among men, even of those

who have no knowledge of the law of wills, is that a will takes effect at the death of the testator. We see nothing about this will that authorizes us to disregard the universal rule.

What is there here to show that the testator intended that this estate should not vest until the death of his last child, which, in this case, was forty-three years after his own death? It is said that the words "at which time" I give and bequeath, clearly show such an intention. But we cannot believe that such could have been the intention of the testator. Wills should be reasonably and sensibly construed, and the other parts of this will show this testator to have been possessed of more than ordinary reason and sense. But what reason can be given why this testator should have intended that this estate should vest at the particular time when the last of his three children should die? Nothing in the very nature of things could have been more uncertain than this. It is difficult to conceive how, in any event, such a thing could ever enter a man's head. What scheme or what purpose could the testator have had in his mind that he should desire that his estate should vest in the grandchildren that should be living at that particular time, so that if one of his grandchildren should have died the day before the death of his last child, his children should have nothing, but if one had died the day after, his children should inherit?

There is nothing in the will to indicate such a purpose. On the contrary, the will clearly shows that he made no distinction between his children or between his grandchildren. He loved them all alike.

Why then should he make any discrimination against his great-grandchildren, and especially to base that discrimination on the longevity of their parents?

But we think the intention of the testator is plain. His purpose was evidently to provide for his children's and his grandchildren's support, during the lives of his children, from the rents of his real estate. For that purpose, the real estate is to remain intact; and at the death of the last child it is to be divided equally among all his grandchildren, share and share alike. It is not at that time that he gives, but, at that time the division takes place.

This construction is reasonable, and is consistent with the other provisions of the will, about which there can be no question, and, with it, the will is a harmonious whole.

All of our reports contain adjudications on similar expressions in wills, and without an exception, so far as I have been able to ascertain, they have all been construed to vest an estate at the death of the testator; and the reason for it is to be found more from the fact that it is the intention of the testator rather than from the fact that the law favors the vesting of estates.

The poverty of our language is such that, unless one is skilled in the law, or has had his attention called to adjudicated cases, it is almost impossible to carve out two or three estates without laying the foundation for claims like the one made in this case.

In one of these cases cited by counsel (Jeffers v. Lampson, 10 O. S., 102) the testator says: "After my debts, etc., have all been paid, I give and bequeath all the rest and residue of my property to my beloved wife, during her natural life; * * * after her decease I give and bequeath all my property to my two sons."

Strictly speaking, there was no estate given in this case to the wife until after the payment of the testator's debts, nor to the remainderman until the death of the wife. And if there had been any reason to have supposed that it was the intention of the testator, it would have been so held; but there was none, and the court held the estate vested at the death of the testator.

The expression here is the same. The words there were, "* * * after the death;" here, they are, "at which time," (referring to the death of the last child.) It is the same as saying, "at his death," or, "after his death," or "then," or "when," referring to his death.

This cause has been argued before us at some length by able counsel, and numerous authorities have been cited to us which we have examined. Our at-

tention was particularly called to the case of Greyson's Estate, in 2d De Gex, Jones and Smith's Reports, page 428 (19th note), where a testator gave real estate to his wife for life, and directed that, after her death, it should be divided share and share alike amongst twelve persons, mentioned by name, or the survivors of them.

All survived the testator, but some died before the widow. It was held that those surviving at the widow's death took.

The decision in that case was based wholly on the word "survivors." There is no such expression here, nor any one of similar import. The expression in that will, "on my wife, Margaret Greyson's, decease," which is similar to the one here "at which time," seems not to have had any weight with the court. In fact it was not urged in argument, or even considered by the court.

We think it unnecessary to discuss any other of the cases cited.

We base our conclusions on the ground that taking the whole will together, and looking to the situation of the parties, the ties which bound the testator to his legatees, and the motives which may reasonably be supposed to have actuated him in the disposition of his estate, that he intended by what he has said that his estate should vest in all his grandchildren living at the time of his death, subject to be opened up to let in other after-born grandchildren.

The rule under which we have arrived at this conclusion is certainly the law. So that, if we have erred in our judgment, it has not been as to what the law is, but in its application.

The judgment will be reversed.

Reuben Tyler and Prescott Smith, for plaintiffs in error.

Wm. Worthington ; Ramsey, Maxwell & Matthews ; Paxton & Warrington and Mallon & Coffey, for defendants.